**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

International Brotherhood
of Teamsters, AFL-CIO,

Plaintiff,

v.

**ORDER**
Civil No. 01-2430 ADM/AJB

Sun Country Airlines, Inc.,
The Mark Travel Corporation,
Funjet Vacations, and Controlled
Group Affiliates A-N,

Defendants.

---

Richard A. Miller, Esq., and Sheila M. Stuhlman, Esq., Miller O'Brien, Minneapolis, MN, appeared on behalf of Plaintiff.

Kerry L. Middleton, Esq., Fafinski Mark & Johnson, P.A., Eden Prairie, MN, appeared for and on behalf of Defendant Sun Country Airlines, Inc.

Mary E. Stumo, Esq., and David J. Goldstein, Esq., Faegre & Benson LLP, Minneapolis, MN, appeared for and on behalf of Defendants The Mark Travel Corporation, Funjet Vacations, and Controlled Group Affiliates A-N.

---

On January 4, 2002, the undersigned United States District Judge heard Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction [Doc. No. 2]. Based upon the arguments of counsel, together with all of the files, records and proceedings, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction [Doc. No. 2] is **GRANTED AS STATED ON THE RECORD** (see attached transcript). Further relief is **DENIED**.

BY THE COURT:

ANN D. MONTGOMERY
UNITED STATES DISTRICT JUDGE

Date: January 8, 2002

JAN 08 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
FOURTH DIVISION

* * * * * * * * * * * * * * * * * *

| | |
|---|---|
| INTERNATIONAL BROTHERHOOD OF TEAMSTERS, AFL-CIO | CIVIL ACTION NO. 01-2430 (ADM/AJB) |
| vs. | |
| SUN COUNTRY AIRLINES, INC., THE MARK TRAVEL CORPORATION, FUNJET VACATIONS, AND CONTROLLED GROUP AFFILIATES A-N | Courtroom 13 West<br>Friday, January 4, 2002<br>Minneapolis, Minnesota |

* * * * * * * * * * * * * * * * * *

# HEARING ON PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

BEFORE THE HONORABLE ANN D. MONTGOMERY
UNITED STATES DISTRICT JUDGE

**TIMOTHY J. WILLETTE, RDR**
Official Court Reporter - United States District Court
1005 United States Courthouse
300 South Fourth Street
Minneapolis, Minnesota 55415
612.664.5108

A P P E A R A N C E S:

For the Plaintiff:

**MILLER * O'BRIEN, PLLP**
By: Richard A. Miller, Esquire
Sheila M. Stuhlman, Esquire
1208 Plymouth Building
12 South Sixth Street
Minneapolis, Minnesota 55402-8335

For defendant Sun Country Airlines:

**FAFINSKI, MARK & JOHNSON, P.A.**
By: Kerry L. Middleton, Esquire
6600 City West Parkway - Suite 300
Eden Prairie, Minnesota 55344

For defendants The Mark Travel Corporation, Funjet Vacations, and Controlled Group Affiliates A-N:

**FAEGRE & BENSON, LLP**
By: Mary E. Stumo, Esquire
David J. Goldstein, Esquire
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402-3901

* * * * *

(10:00 a.m.)

P R O C E E D I N G S

IN OPEN COURT

THE COURT: Good morning. Please be seated.

THE CLERK: The matter before the Court is International Brotherhood of Teamsters vs. Sun Country Airlines, et al, Case No. 01-2430.

THE COURT: Good morning, counsel and parties. I'd like to thank all of you for responding to the quick notice on the hearing as the matter does require some urgency, and I think as counsel know, I was out of town and unable to have this hearing until today. Yesterday, upon review of the first pleadings and the memoranda that had been issued, it seemed to me that this matter might well benefit from some discussions of settlement and whether or not the TRO hearing should go forward.

To facilitate that, I've asked the magistrate judge assigned to this case, Judge Art Boylan, to come over here. He's seated in the back portion of the courtroom and will be available to assist the parties in discussing possibilities that may preclude a hearing.

I will be ready to hear this case at 11 o'clock this morning as originally scheduled, and at about 11 o'clock I'm going to confer with Judge Boylan as to whether significant progress has been made so that it's worthwhile to

continue the discussions. When that happens and if we still have an impasse situation, I will be available to hear the motion this afternoon. I've cleared my calendar of other matters for the day so that I can give this case its primary attention.

I think at this time it would be helpful to have an identification of the counsel for the various parties as well as which clients are present in the courtroom and then the availability put on the record as to the other parties by phone. I realize the attorneys have made significant efforts to get the requisite persons here and I am appreciative of the fact that with less than 24 hours' notice that can be very difficult and particularly given the circumstances of this case.

Let's begin by noting the appearance of the plaintiff. Counsel?

MR. MILLER: Your Honor, my name is Richard Miller and I'm the local attorney for the Teamsters, and with me is Sheila Stuhlman from our office. Available by telephone will be Roland Wilder, the attorney for the International in Washington, D.C., and Bill Wilder of the same firm, Baptiste & Wilder. Also in the courtroom --

THE COURT: Brothers, father and son?

MR. MILLER: Father and son.

THE COURT: Okay.

MR. MILLER: I believe.

THE COURT: Okay. I won't hold you to it.

MR. MILLER: With me in the courtroom today are Danny Campbell, the president of Teamsters Local 2000, Anne Meyer --

Anne, I've forgotten your title.

MS. MEYER: Vice president.

MR. MILLER: Vice president, and Joe Battaglia, the base rep for Local 2000 Teamsters employed at Sun Country. He is employed at Sun Country.

THE COURT: I guess I'm appreciative of the fact that given the nature of the organization, who's in authority may be subject to some need for discussion with persons beyond those present here today. Do you see that as an obstacle that is going to present a significant --

MR. MILLER: I don't. I think that all of the people who make decisions on the plaintiff's side are either present or available by telephone.

THE COURT: Okay. Thank you very much.

Counsel?

MR. MIDDLETON: Kerry Middleton, counsel for Sun Country Airlines. Sun Country's CEO is available by telephone today, David Banmiller (ph). Unfortunately with the short notice he couldn't be here in person, he's in a meeting, but I have cell phone numbers and I can get ahold of

Mr. Banmiller.

THE COURT: I would like you to tell him when you confer with him that I do want him to stay available by phone throughout the duration of the settlement conference and the hearing perhaps just so that we make sure that we don't lose him along the way.

MR. MIDDLETON: Certainly.

THE COURT: Thank you. Ms. Stumo?

MS. STUMO: Good morning, your Honor. Mary Stumo and David Goldstein here on behalf of Mark Travel Corporation, Funjet Vacations and Controlled Group Affiliates A through N. I do not have a client here in person, but I do have the executive vice president and CFO, Mr. Mustafa Yundem, available by phone today.

THE COURT: Is he local or --

MS. STUMO: He's in Milwaukee, your Honor.

THE COURT: Okay. And would you give him the same warning, that I want him to stay by a telephone and be reachable throughout the day?

MS. STUMO: I will, your Honor. Thank you.

THE COURT: Thank you very much.

As I indicated, Magistrate Judge Boylan is here and I think is ready to proceed. The law clerk assigned to this matter is Mr. Gabrielson, and if there are matters that need to be communicated or people shuffled around at all, he will

assist you in that regard. I think you both have been notified we do have conference rooms. It's nice to have a modern courthouse to do this where we can set you up and we'll make phone facilities available as needed throughout the morning.

All right. Unless there are questions as to procedure or expectations, my thought is that I should turn you over to Judge Boylan for settlement conferences. Any questions or concerns?

Okay. Thank you very much. As I indicated, I'll be checking with Judge Boylan about 11 to see what the progress is and I will be available throughout the day. Actually, you've given me quite a stack of reading to do in the absence, so I'll be proceeding on that. Thank you very much.

(Recess taken at 10:11 a.m.)

* * * * *

(12:21 p.m.)

IN OPEN COURT

THE COURT: Good morning, or I guess it's afternoon. Please be seated.

The record should reflect that all parties and counsel have been working with Magistrate Judge Boylan to see if this matter could be resolved. It is my understanding based on my conversation with Magistrate Judge Boylan that

much of the case has been resolved and is subject to an agreement by the defense. There may be some issues that remain for hearing as I understand it.

I think perhaps it makes most sense to get a recitation on the record as to the status quo or the agreements that have been reached as a result of the discussions this morning.

At this time, Mr. O'Brien --

MR. MILLER: Miller, your Honor.

THE COURT: -- is that an accurate statement of the proceedings to this point this morning as you understand it?

MR. MILLER: It's Miller, your Honor. Yes.

THE COURT: All right. Magistrate Boylan has alerted me that there have been some discussions relating to Mark Travel and Funjet Vacations that may resolve their need to appear here for the remainder of the hearings, and I'm not sure if you or Ms. Stumo should be the recorder of what has been agreed to as to the status of those defendants.

MR. MILLER: Well, I'd be happy to take a shot at it, your Honor.

THE COURT: Okay.

MR. MILLER: The defendant Mark Travel has agreed pursuant to the affidavits filed with the Court to provide COBRA continuation coverage under the Mark Travel policy.

That coverage, as I understand it, will become effective December 20th. There's a period of time between the furlough of the flight attendants either on December 1st or December 8th up to December 20th when the flight attendants, as I understand it, are covered and will be covered under the now terminated --

THE COURT: Great-West policy?

MR. MILLER: Great-West/Sun Country plan, yes. Because Mark Travel is providing that coverage, I believe that our claims against them are essentially extinguished and moot, I guess, is another way of saying it, and they have no further participation in the hearing today.

THE COURT: All right. Ms. Stumo --

MS. STUMO: I'd just like to clarify --

THE COURT: All right.

MS. STUMO: -- because there's been no agreement about anything and I was a little shocked to have any representation made to that, because our position is the Court has no standing and we're not in any way changing that position. The affidavits reflect what Mark Travel is going to do, was going to do regardless of this hearing and that is accurate, but we have reached no agreements about anything.

THE COURT: All right. But the representation as to the continuation of the COBRA coverage, the effective dates and the factual recitations just made by Mr. O'Brien do

represent the reality of the situation?

MS. STUMO: I believe those are accurate if they conform to what the affidavits said. It's our understanding that the coverage would begin December 21st, that there would be no gap and that the person must elect and pay the coverage.

THE COURT: I assume you do not take issue, then, with Mr. O'Brien's statement that that moots out the issues raised against your clients in the original motion.

MS. STUMO: Well, in fact our position is two. One, there's no standing, but two, the issue is moot.

THE COURT: Okay. In any event, regardless of the theory, mootness or lack of standing, I take it there is no need for continued participation by defendants Mark Travel or Funjet in this proceeding.

MR. MILLER: Your Honor, first of all, I'm flattered by your reference to me as Mr. O'Brien.

THE COURT: Oh, I'm sorry.

MR. MILLER: He's much younger and better looking than I am --

THE COURT: I'm sorry. I looked at the letterhead --

MR. MILLER: -- but I'm Miller.

THE COURT: I'm sorry. Yes.

MR. MILLER: Yes, I believe that factually

explains the facts, yes.

THE COURT: All right.

MS. STUMO: Just for the record, could I be sure that it also dismisses the Controlled Group Affiliates A through N as well?

THE COURT: All right.

Based on the record that we have just made, I do find that the defendants Mark Travel, Funjet Vacations, and Controlled Group Affiliates A through N are dismissed at this point.

MS. STUMO: Thank you, your Honor.

(Ms. Stumo and Mr. Goldstein exit the courtroom)

THE COURT: Proceeding on then to the claims as made against Sun Country Airlines, Inc., Mr. Miller, correcting my earlier error, I'd like you to bring into focus for me what issues remain, or maybe we should start out with what has been agreed to with respect to Sun Country, and Mr. Middleton, of course, will listen carefully and make sure this is accurate.

MR. MILLER: With respect to Sun Country, it's my understanding, as I stated earlier, that the flight attendants will and have been and are covered under the old policy during that period of time from the date of their furlough, which in some cases is December 1st and in other cases is December 20th, up to and including -- excuse me, I

think I misstated that -- December 1st and December 8th up to and including December 20th, that they will be covered under the old Great-Western policy.

It's my understanding that there is also an agreement to cover under some policy -- and I'm not clear here which policy -- flight attendants who are recalled to fly in the month of January 2002. I have not received any indication that that would extend to flight attendants who are recalled to fly subsequent to January 2002. I'm a little unclear about that and perhaps Mr. Middleton could explain that a little further.

THE COURT: Okay. Mr. Middleton.

MR. MIDDLETON: Certainly. For clarification -- and maybe it's purely semantic, but in terms of coverage, we've got to remember that Sun Country is not the plan provider and doesn't decide who's covered and who's not, but the individual conversion plans that are set out in the motion papers, that flight attendants who were furloughed have the option of purchasing -- under those plans, if they exercise their right to purchase one of those policies, there's no gap in coverage, whether they were furloughed December 1 or December 8. Now --

THE COURT: That would take us up to December 20th?

MR. MIDDLETON: Correct. But again, my point is,

who's covered and who's not is not something we decide, but Great-West --

THE COURT: It's a product of the plan --

MR. MIDDLETON: Exactly.

THE COURT: -- carrier.

MR. MIDDLETON: And Great-West has advised Sun Country that by purchasing the option on behalf of the employees to have these conversion policies, that there will not be a gap in coverage.

THE COURT: All right.

MR. MIDDLETON: So with that caveat, in general that's -- the point is that Sun Country's understanding is there is no gap in coverage.

With regard to flight attendants called back, to date five have been called back and the company is going to pay the premium under those conversion policies. So, again, they're not providing coverage for anybody, but they're going to pay whatever the health insurance premium is for those individual conversion policies for those five through the month of January. It's my understanding no decision has been made about whether additional flight attendants will be called back.

THE COURT: Or what will happen subsequent to January 30th?

MR. MIDDLETON: Correct.

THE COURT: All right. I didn't mean to cut you off.

MR. MIDDLETON: That's okay. I just wanted to point out and make it clear that if additional flight attendants are called back in January, my understanding is that the health insurance premium would also be paid for those individuals, but that is a detail that we have not specifically discussed and it might make sense for me to make a phone call to make sure, because that is a financial commitment that I'm not prepared to make on behalf of the company until I have confirmation from them.

THE COURT: That's anticipating a factual situation, that is, recall of stewardesses, more than have been called back.

MR. MIDDLETON: Correct.

THE COURT: That isn't ripe yet.

MR. MIDDLETON: Exactly, it has not occurred and it would be speculative for the Court or for any of the parties --

THE COURT: At least for injunctive purposes since we're preserving a status quo, that this is not a part of the status quo.

MR. MIDDLETON: Correct.

THE COURT: Okay.

MR. MIDDLETON: I just wanted to make that clear.

THE COURT: I think that is outside the parameters of the relief sought in any event, so it at most could be a preservation of the status quo.

MR. MIDDLETON: Okay. Thank you.

THE COURT: All right. Mr. Miller, that, I take it, satisfies some of the concerns of the plaintiff as it relates to the issues addressed in your memorandum, correct?

MR. MILLER: Your Honor, unfortunately it doesn't. That's their agreement to do that. That does not satisfy our concerns, but that is what they've agreed to do.

THE COURT: I said satisfy some of your concerns.

MR. MILLER: Yes.

THE COURT: All right. I think what would be most helpful now is if you could bring into focus for me and hopefully as simply as possible what remains at issue here and is appropriate for judicial determination.

MR. MILLER: Your Honor, the status quo injunction that we have filed is what is often called an active one, that is, that it requires, should it be granted, that something affirmatively be done to create an ongoing situation that existed prior to the time that some unilateral action was taken, and in this case it would be to, number one, reinstate the plan that was in effect at the time that it was terminated, that is, December 20th, 2001, to reinstate that plan.

Now, with respect to flight attendants who have subsequently or were previously terminated, we do have an agreement that there will be some COBRA coverage available to those flight attendants, so that satisfies with respect to the injunctive relief sought the COBRA issues that we for public policy purposes argued in our motion papers for the TRO, but it does not put back in place the status quo that we believe should be ordered here because of the fact that the employer during the course of negotiation made unilateral changes in the terms and conditions of employment in violation of the statute, and we've kind of detailed that in our brief.

THE COURT: And they've responded in their brief, of course, that the policy was cancelled and it's beyond the reinstatement period. How should I legally analyze that argument?

MR. MILLER: Well, the argument I made earlier. It's similar to the situation of the person who had recently been convicted of murdering his parents and when in front of the judge for sentencing pleads mercy on the grounds that he was an orphan.

Now, what the company has done subsequent to their violation of the contract is interesting but irrelevant, and if they're putting themselves in the position where they're not financially able to live up to their contractual

commitments to these individuals, that is their problem and not the Court's problem. They have an obligation that's clearly outlined in the law, clearly outlined in the contract, to maintain that insurance until there is a termination of the collective bargaining process. That's very clear under the law. They violated that and that's their problem, how they spent their money in the meantime is their problem, and for them to dissipate their assets and come into court today and to say, "I'm sorry, Judge, we're broke because we spent it all on things that we felt more important," that just doesn't carry the day for me and I think it oughtn't for the Court either.

THE COURT: But then wouldn't I be issuing a pretty hollow order? I mean, if I'm to ask them to do something that they can't do, how am I going to enforce the order?

MR. MILLER: Well, I think if the Court issues an order, it's up to the responding party to state good cause satisfactory to the Court why they should not be held in contempt for failure to abide by that order. We don't have that here. We have a bunch of things that are rather illusory and conclusory, they're very self-serving. Of course, that's what should be in an affidavit, but nevertheless should it be tested and I think it should be. We're not able to test their ability to pay, quote, unquote,

at this time. That's up to them to figure that out and to present evidence to the Court satisfactory to the Court.

What I am asking the Court to do on behalf of the flight attendants is to establish a plan of insurance that will cover them while they are working. The employer needs to have flight attendants working for it in order to fly and maintain its certification. That's an admission. There's no doubt about that. These people have to be covered. They're going to be paid. Are they going to be paid pursuant to the contract or are they going to pay them something else? Is it only the health insurance that they're not going to pay? Why did they pick that out? That's unconscionable. So, we want an injunction from the Court ordering the maintenance of the status quo on an active basis pending the resolution of the contract negotiations pursuant to the statute.

With respect to the pay issues, there are quite obviously minor disputes and let's not argue that and we admit that in our pleadings. But we feel that because of the potential dissipation of the assets of the corporation, that any eventual award of an arbitrator, should one issue, awarding back pay, there won't be any money there to pay it, so that's why we would like to have the Court issue another order requiring the employer to deposit with the court funds sufficient, and we believe $650,000 would be an appropriate amount based upon 374 flight attendants, essentially half a

month's pay, plus accrued vacation.

So for those reasons we're asking for injunctive relief.

THE COURT: You're actually asking that those assets be segregated and maintained? It isn't just a display that the assets exist currently?

MR. MILLER: That's correct.

THE COURT: All right.

MR. MILLER: I think that's basically our argument, your Honor.

THE COURT: All right. I think I understand your position. Mr. Middleton.

MR. MIDDLETON: Well, with regard to reinstating the health insurance, frankly, your Honor, you might as well order Sun Country to fly to the moon. We'll be right back in here before you having the same discussion and I'll be standing here telling you we can't do it. There's evidence before the Court that there's $171,000 in the bank yesterday. There's $160 million in debt. Any money anywhere is subject to garnishment at any time by any number of creditors, for one thing. The order would be -- it would be futile. You'd be placing a party in a position of, in theory, being in contempt of court when we know going in it's absolutely out of their hands in terms of complying with the order.

As to how we got here from a financial standpoint

is summarized in the motion papers. The company's -- one of their last financial gasps up to this point was spending over $800,000 to make sure that these flight attendants had the opportunity to have continued health insurance coverage.

But beyond that, how we got here is not really relevant to where we are today. If an order like that is entered, if you look at the balance-of-harms analysis for a temporary restraining order or injunctive relief, it's significant harm to Sun Country because they can't do it. They simply can't do what the Court would be ordering.

As to the pay issue, the vacation pay and the notice or furlough-notice pay issue, it's a minor dispute. I think the parties agree to that. As a result of that, the Court doesn't have jurisdiction to enter any sort of an order related to a minor dispute. It should go to arbitration and let an arbitrator decide.

THE COURT: There is an agreement, as I understand it, on Sun Country's part to arbitrate the dispute, correct, just so that we're clear?

MR. MIDDLETON: Well, yes, there is -- we don't -- maybe it's again semantics. We don't dispute that that is a matter for arbitration, but the point is, I don't think the Court has jurisdiction to enter any sort of a ruling related to a minor dispute.

Ordering us to set aside any amount of funds,

again, is a futile order. There's nothing to set aside. And if it was done, again it would be subject to potential garnishment by any number of creditors. So it's -- we'll be right back here in front of you discussing why we didn't enter the order and I'll be telling you then what I'm telling you now, although the numbers might be a little bit different. But the airline's not flying, and when airlines don't fly they don't make any money. They've flown once since December 7th and that was yesterday. And the flight attendants who were brought back, we're paying for their health insurance through the month of January, and at this point we can't say what's going to happen after January in terms of bringing anybody back. They would love to bring everybody back and start flying again and reinstate health insurance if possible, but due to circumstances beyond their control they can't do it. They simply can't do it.

THE COURT: All right. Mr. Miller, would you like the final word in this matter?

MR. MILLER: Yes, just very briefly.

I think Mr. Middleton's statement indicates to the Court why an order is necessary ordering them to arbitrate these pay disputes. They are arbitrable. The company has not responded to the grievances that have been filed, that were filed over a month ago or almost a month ago, and here we sit. We need an order ordering them to do what the law

requires them to do, unfortunately.

With respect to the termination of the health insurance, remember, they terminated that health insurance of their own free will. They decided to terminate it. It wasn't terminated by Great-Western. They said that Great-Western might and perhaps could, would be in a position to. They didn't. The company terminated it and not the Great-Western. So they did it and now they're pleading that the Court should not order them to undo what they've wrongfully done and I find that a difficult argument that they're making to the Court.

Thank you, your Honor.

THE COURT: Well, I do order that Sun Country proceed with the arbitration of the matters just discussed and that is an affirmative order.

I also order that the relief sought by the plaintiff to the matters that have been largely -- although maybe not subject to a settlement agreement -- have been the representations made by the defendants in this case must be lived up to as ordered, and I think in that regard the status quo will be reserved.

The other items of relief requested by the plaintiff in its original motion papers, I am satisfied based upon the affidavits attached to the defendant's pleadings that there is a genuine concern about the wherewithal of Sun

Country certainly to segregate an amount as suggested by plaintiff as sort of a good faith escrow account or however it would be designated. Even though I understand the nature of Mr. Miller's argument for active relief, I think that goes beyond the ability of the Court and is not a maintenance of the status quo, and for those reasons that relief as well as the other more aggressive relief requested by the plaintiff will be denied at this time.

Now, I'm going to continue -- and obviously the underlying action remains there and if the financial wherewithal of the company changes in one respect or another, I'm going to leave open the opportunity of revisiting these issues. But given the discussions this morning, I think that much of the ground for relief sought in the original pleadings has been accomplished and that beyond that agreement reached today is I think beyond the ability of the Court to order at this time.

All right. I am going to assume that the record we've just made will suffice by way of order.

Mr. Miller, obviously you can order the transcript. Do you need something beyond that for your purposes? I can issue a one-page order that the temporary injunction motion was granted as stated on the record today and then attach the transcript. Would that suffice?

MR. MILLER: That would be sufficient, your Honor.

THE COURT: Would that work for your purposes as well, Mr. Middleton?

MR. MIDDLETON: I think it would, your Honor. I just want to make sure I understand exactly what the Court's ordering. The Court is not ordering Sun Country to reinstate health insurance.

THE COURT: I am not.

MR. MIDDLETON: That issue has been resolved through the other things we discussed on --

THE COURT: Only as to what we've discussed on the record today and not anything beyond that.

MR. MIDDLETON: Okay. Other than that, no, I don't have any questions.

THE COURT: All right. Anything further?

Thank you all for your cooperation.

MR. MIDDLETON: Thank you, your Honor.

(Proceedings concluded at 12:47 p.m.)

* * * * *

# C E R T I F I C A T E

I, **TIMOTHY J. WILLETTE,** Official Court Reporter for the United States District Court, do hereby certify that the foregoing pages are a true and accurate transcription of my shorthand notes, taken in the aforementioned matter, to the best of my skill and ability.

**TIMOTHY J. WILLETTE, RDR**
Official Court Reporter - U.S. District Court
1005 United States Courthouse
300 South Fourth Street
Minneapolis, Minnesota 55415-2247
612.664.5108